UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>GLOBAL ONE GROUP, LLC; RICHARD YOUNG; WILLIAM WILLARD; MAELEE ENTERPRISES, INC.; and BADIE, Inc.,<br><br>　　　　Defendants. | 3:08-CR-00120-LRH-VPC<br><br>ORDER |

　　　Presently before the court is Defendants Global One Group, Richard Young, and Maelee Enterprises' (collectively "Defendants") Motion to Suppress Evidence and for Return of Property (#34[1]). The government has filed a response (#35) to which Defendants replied (#36).

**I.　Facts and Procedural History**

　　　On December 3, 2008, the grand jury for the District of Nevada returned a 38-count indictment for criminal conspiracy, mail fraud, wire fraud, money laundering, and forfeiture against Defendants Global One Group ("Global One"), Richard Young, William Willard, Maelee Enterprises, and Badie, Inc. Defendant Global One Group is a Nevada limited liability company founded by Defendants Richard Young and William Willard that provides information regarding trading techniques and opportunities on the Foreign Exchange ("Forex"). Defendant Young is the

---

[1] Refers to the court's docket entry number.

President and CEO of Global One, and Defendant Willard is a member of Global One who moderates conference calls, recruits investors, and assists clients in executing trades through approved Global One investors on the Forex.  Defendants Maelee Enterprises and Badie, Inc., are also Nevada corporations.  Defendant Young is the President of Maelee Enterprises, and Defendant Willard is the president of Badie.

According to the indictment, Global One charges its members an annual $500 membership fee, which gives members access to Global One's website, conference calls, and web-based seminars. (Indictment (#3), ¶ 7.)  In addition to the membership fee, Global One allegedly solicits and receives loans from its members that are to be repaid by commissions Global One earns through the introduction of Global One members to Forex brokers.  (*Id.* at ¶ 8.)

The indictment further indicates that during the conference calls and web-based seminars, Defendants Young and Willard represented to Global One's members that there is a substantial rate of return on investments available for Global One members on the Forex market.  (*Id.* at ¶ 9.)  For example, the government alleges that during conference calls and web-based seminars, Defendant Willard told Global One's members that, in one year, Defendant Young had made 8,000 trades on the Forex market without a single loss.

During these conference calls and seminars, Defendant Young also informed Global One's members of a software program, Global Trac, that supposedly was able to execute successful trades on the Forex market without manual assistance.  (*Id.* at ¶¶ 9-10.)  Defendants Young and Willard allegedly obtained limited executed powers of attorney from Global One's members to enable the Global Trac to administer the members' investments and to enable Global One approved Forex brokers to make trades on the Forex market on the members' behalf.  (*Id.* at ¶ 11.)  The indictment alleges that no such software ever existed.  (*Id.* at ¶ 10.)

The indictment alleges Defendants engaged in this conduct to obtain "thousands of dollars" from Global One's members, "a substantial portion of which was used for personal use by

[D]efendants Young, Willard, and [others]." (*Id.* at ¶ 13.)  In particular, from April 25, 2006, to June 11, 2007, Global One members allegedly sent through the mail to Defendant Young funds ranging from $20,000 to $180,000, which Defendant Young then deposited in Global One's bank accounts. (*Id.* at ¶ 23.)  Similarly, from April 25, 2006, to August 29, 2006, Global one members sent by wire transfer directly to Global One's bank accounts funds ranging from $20,000 to $95,000.  (*Id.*)

Additionally, from April 4, 2006, to October 29, 2006, Defendants Young and Willard allegedly transferred funds ranging from $25,000 to $450,000 from Global One's bank accounts to bank accounts held by Defendants Maelee Enterprises and Badie, Inc.. (*Id.* at ¶¶ 30-31.) According to the indictment, Defendant Young allegedly then withdrew funds from the Maelee Enterprises account, and Defendant Willard allegedly then withdrew funds from the Badie, Inc. account. (*Id.* at ¶ 14.)

On December 29, 2008, the government applied for seizure warrants seeking access to three bank accounts, the merchant account, the operating account, and the payout account, held by Global One at Washington Mutual Bank in Las Vegas, Nevada.  In support of the warrant applications Internal Revenue Service Special Agent Christopher Wajda submitted to the magistrate the indictment and affidavits.  Magistrate Judge Cooke issued the seizure warrants the same day.

In the motion to suppress, Defendants ask the court to suppress evidence obtained as a result of the seizure warrants.  Defendants also ask the court to order the government to return the contents of the bank accounts to Defendants.  A hearing was held on May 12, 2009, at 1:30 p.m.

**II.  Discussion**

Magistrate Judge Cooke issued the seizure warrants pursuant to 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(C).  Generally, seizures made under § 981 must be made pursuant to a warrant obtained in the same way that the government obtains a search warrant.  18 U.S.C. § 981(b)(2).  Accordingly, to resolve the motion to suppress, the court must determine whether

Magistrate Judge Cooke issued the seizure warrants based upon probable cause.

In determining whether probable cause to issue a warrant exists, the court considers the totality of the circumstances. *United States v. Seybold*, 726 F.2d 502, 504 (9th Cir. 1984) (*citing Illinois v. Gates*, 426 U.S. 213, 238-39 (1983)). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* The magistrates determination is entitled to "great deference," and a reviewing court may not reverse unless the determination is clearly erroneous. *Id.* at 503.

Here, in deciding whether to issue the warrants, the magistrate had before her affidavits submitted by Agent Wajda and a copy of the indictment. Defendants contend the indictment affidavits filed in support of the warrant applications are "replete with conclusory allegations" and therefore do not meet the level of required specificity to establish probable cause.

The court has reviewed the relevant law, the parties' arguments, the indictment and Agent Wajda's affidavits and finds that these documents support the magistrate's finding of probable cause.[2] Viewed together, the indictment and the affidavits indicate a fair probability that evidence of the alleged wire fraud, mail fraud and money laundering will be found in the bank accounts. Although an indictment alone does not constitute probable cause to issue a warrant, in making a probable cause determination, a magistrate may consider information obtained in an indictment. *Id.* at 504-05 (*citing United States v. Ellsworth*, 647 F.2d 957, 963-64 (9th Cir. 1981)). In addition, opinions of experienced law enforcement officers are "highly important" in making probable cause

---

[2] In arguing to the contrary, Defendants cite *United States v. Rutledge*, 437 F.3d 917, 923 (9th Cir. 2006). However, the Ninth Circuit later withdrew this opinion as moot, 448 F.3d 1080 (9th Cir. 2006), because the defendant had entered a guilty plea a week before the court filed its opinion. Nonetheless, even if the *Rutledge* opinion was controlling precedent, the case is distinguishable. In *Rutledge*, the government was unable to trace the sought-after assets to the defendant's illegal conduct. The Ninth Circuit held that the defendant's control over the corporation was insufficient to establish that the assets of the corporation were subject to forfeiture. Here, the government has made a sufficient showing that the assets in the seized bank account are traceable to Defendants' allegedly illegal conduct.

determinations. *Id.* at 504 (citations omitted).

In particular, the documents indicate that through the conduct alleged in the indictment Defendants Young and Willard caused Global One members to turn over thousands of dollars to Global One. (Indictment (#3), ¶ 13.) Global One members either wired these funds directly to Global One's operating and merchant accounts or mailed the funds to Defendant Young who then deposited the funds in these accounts. (*Id.* at ¶ 23; Defs.' Mot. Suppress (#34), Wajda Affs., 08080-82 at ¶¶ 9, 11-13, 07983-85 at ¶¶ 8, 10-12.) In addition, Defendant Young transferred funds from the operating account to the payout account. (Wajda Affs., 08016-17 at ¶ 11.) Defendants Young and Willard then transferred funds from the operating, payout, or merchant accounts to accounts held by Defendants Maelee Enterprises or Badie, Inc., which Defendants Young and Willard control. (Indictment (#3), ¶¶ 14, 30-31.) Based on his investigation, including witness interviews, Agent Wajda concluded that the funds in Global One's operating, payout, and merchant accounts are traceable proceeds of the wire and mail fraud and associated conspiracy and that the funds were involved in the alleged money laundering. (Wajda Affs., 08081-82 at ¶ 12, 070984-85 at  ¶ 11, 08016-17 at ¶ 11.)

In light of the information before the magistrate and the "great deference" afforded the magistrate's probable cause determination, the court will uphold the magistrate's finding of probable cause. Suppression of the evidence found in the operating, merchant, and payout accounts is therefore not warranted.

IT IS THEREFORE ORDERED that Defendants' Motion to Suppress (#34) is hereby DENIED.

IT IS SO ORDERED.

DATED this 19th day of May, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26